UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


DANBURY INSURANCE COMPANY         :   CASE NO.   302CV2097 (RNC)
            Plaintiff             :
                                  :
                                  :
VS.                               :
                                  :
                                  :
JASON GINNETTI                    :
            Defendant             :   November 5, 2003


MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S OBJECTION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT


Pursuant to Rule 9(a) of the Local Rules of Civil Procedure, Defendant, JASON GINNETTI, submits the following Memorandum of Points and Authorities in opposition to Plaintiff's Request for Summary Judgment. The Defendant submits that there exists questions of material fact and as a result, the Plaintiff's Motion for Summary Judgment should be denied.

4

I. **FACTS**:

On May 23, 2001, the defendant, Jason Ginnetti submitted an application for homeowner's insurance to an agent of the CPM Insurance Co. Prior to filling out the application, the defendant's friend and co-habitant, Tricia Farace verbally notified an agent of the CPM Insurance Co. that she and the defendant owned two pet dogs that lived on the property with them (See Defendant's attached Exhibits B and C). On the actual application, in response to the question, "Does applicant or any tenant have any animals or exotic pets?" the agent of the CPM Insurance Company mistakenly checked off the box next to "no". The defendant subsequently signed the application without realizing the incorrect answer had been checked and submitted it to the CPM Insurance Company through its agent.

Subsequently, the Danbury Insurance Company issued a homeowner's policy (#DH0161160) to the defendant with an effective date of June 1, 2002 through June 1, 2003. This homeowner's policy issued by the Danbury Insurance Company was in full effect on November 27, 2002, when Jessica Smith commenced a legal action for a dog bite that she suffered while visiting the defendant's house.

5

## II. **SUMMARY JUDGMENT STANDARD**:

Under Fed. R. Civ. P. 56(c), a motion for summary judgment shall be granted when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. In general, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material only if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Whether a genuine issue of material fact is presented will be determined by asking if "a reasonable jury could return a verdict for the non-moving party." Id. In considering a motion for summary judgment, "[i]nferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc.

6

v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted).

III. **LEGAL ARGUMENT:**

A. **CONNECTICUT LAW DOES NOT ALLOW FOR THE RECISSION OF A HOMEOWNER'S INSURANCE POLICY UNDER THESE FACTS**

In his Motion for Summary Judgment, the Plaintiff relies on State Bank & Trust v. Connecticut General Life Insurance Co., 109 Conn. 67, 72-73 (1929), as quoted in Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 692 (1991), for the principle that rescission is permissible where the "… insurer can demonstrate that the insured has made material representations…relied on by the insurance company, which were untrue, and known by the assured to be untrue when made…" without any necessity to show fraud on the part of the insured. While this is a correct interpretation of Connecticut law, the plaintiff fails to acknowledge that the Middlesex court also stated in its ruling that they were merely "reaffirming the continuing viability of the principles announced in State Bank & Trust Co.," which demonstrated that they have rejected that line of authority holding that innocent misrepresentations are sufficient to void a life insurance policy. Middlesex Mutual Assurance Co. v. Walsh, supra

While the court acknowledged it had not previously addressed the issue in the automobile insurance context, they found no

7

persuasive reason why the principles governing misrepresentations on life insurance applications should not apply equally to misrepresentations on automobile insurance applications. They held that in order to constitute a misrepresentation sufficient to defeat recovery on an automobile insurance policy, a material representation on an application for such a policy must be known by the insured to be false when made. See <u>Bristol v. Commercial Union Life Ins. Co. of America</u>, supra; & <u>State Bank Trust Co. v. Connecticut General Life Ins. Co.</u>, supra.

Here, notwithstanding the fact the insurance policy in question is neither a life insurance policy, nor an automobile insurance policy, the plaintiff cites no authority that would contradict the court's logic in Middlesex, that there is no persuasive reason the same rationale should not be extended to other types of insurance besides life insurance contracts.

Moreover, although the defendant concedes that the application for homeowner's insurance had an incorrect box mistakenly checked by a CPM Insurance representative in answer to the question whether he owned "animals or exotic pets", and that he subsequently endorsed the application with his signature, this mistake was unknown to the defendant. The defendant has maintained unequivocally, he did not know the insurance representative gave the incorrect reply on the application, and he was therefore unaware of the inaccurate answer on the application. (Plaintiff Request for Interrogatories, p. 2)

8

Because the mistaken answer entered on the defendant's insurance application by the agent of CPM Insurance was unknown to the defendant, a reasonable jury could find any misrepresentation to have been innocently made. Since whether or not the mistake on the application was innocently made is a disputed factual issue, and because that answer could determine whether the Danbury Insurance Company had a right to rescission of the insurance contract, the plaintiff's Motion for Summary Judgment should be denied.

### B. IF AN INSURANCE EMPLOYEE IS ACTING IN AN AGENT'S CAPACITY, HE IS RESPONSIBLE FOR MISTAKEN ANSWERS HE ENTERS ON AN INSURANCE APPLICATION

While the defendant concedes he was unaware of the mistake made by the representative of the CPM Insurance Company when he signed the application for insurance, that fact does not relieve the agent of responsibility for the mistake. The plaintiff's Motion for Summary Judgment makes citation to Kelly v. John Hancock Mutual Life Ins. Co., 131 Conn. 106, 110, (1944), and Ryan v. World Mutual Life Ins. Co., 41 Conn. 168, (1894), to buttress the fact that an insured is bound to the representations he makes in an application for insurance whether he read it or not because of a duty to know the contents of an application he signed.

9

In Kelly, an insured was held bound to answers in her application for life insurance where she endorsed it with her signature without reviewing it for errors despite the fact it was an insurance company's agent who supplied the mistaken answers to the questions. Kelly v. John Hancock Mutual Life Ins. Co., supra 110. Similarly, in Ryan, an agent for Mutual Life Insurance Company incorrectly answered questions on a life insurance application regarding the health of the insured. The insured subsequently endorsed the application by signing it, and was held bound to the mistaken answers even though she was unaware of them. Ryan v. World Mutual Life Ins. Co., 41 Conn., supra 171

In both instances, the court held that an insurance representative could not be responsible for incorrect answers where the policy was for life insurance and there was no misrepresentation regarding the agent's capacity. Neither agent possessed either authority, or apparent authority to bind the company to a contract with an insured. In each situation, the insurance company had not authorized their employee to bind it to a life insurance policy, and the court agreed with the maxim that a contract for life insurance could only be entered into by one with prior authorization from the company. Id. 175. Thus, because the insurance company's representative possessed neither authority, nor apparent authority to bind the company to a life insurance contract, the insured's in both instances were held

10

responsible for the application's accuracy, notwithstanding the fact the insurance agent made mistakes.

However, where a representative of an insurance company is contracting for insurance other than life insurance, it has been a long standing principle of Connecticut law that a contract for insurance will be enforceable against the company where the representative was acting as an agent of the company, notwithstanding any innocent mistakes made on an application for insurance. Malleable Iron Works v. Phoenix Ins. Co., 25 Conn. 465 (1857). See also Bebee v. Hartford County Mut. Fire Insurance Co., 25 Conn. 51 (1856); Hough v. City Fire Ins. Co. 29 Conn. 10 (1860).

In Woodbury Savings Bank and Building Association v. The Charter Oak Fire and Marine Insurance, 31 Conn. 517; (1863), where an insurance representative made a mistake on an insurance application for a mortgage interest, the court held that the policy was enforceable by the insured notwithstanding any mistake on the part of the insured, because the representative was an agent of the company and had authority to bind the company to a contract. This was true although the company instructed the representative he was not authorized to insure mortgage interests. Because the agent had apparent authority in the eyes of the insured, the court held an enforceable contract for insurance was entered into at the time of application. Since the insurance representative was in an agent's capacity, the court held him

11

responsible for the insurance application's accuracy since he supplied the mistaken answers.

Where a question of agency, or apparent agency does exist, Connecticut courts have held that summary judgment is not properly granted. Such questions pose genuine issues of material fact such that summary judgment is not appropriate. Brinkley v. Prudential Prop. & Cas. Ins. Co., 2000 Conn. Super. LEXIS 1011. The scope of an agent's authority is dependent upon the construction of any contract creating the agency, the purpose of the agency and the circumstances existing at the time of its creation. See Bank of Montreal v. Gallo, 3 Conn. App. 268, 273-74, 487 A.2d 1101 (1985). Thus, "the nature and extent of an agent's authority is a question of fact for the trier E. Paul Kovacs & Co. v. Alpert, 180 Conn. 120, 126 (1980). "Where the evidence is conflicting or where there are several reasonable inferences which can be drawn, the nature and extent of an agent's authority is a question of fact for the trier of facts." West Haven v. United States Fidelity & Guaranty Co., 174 Conn. 392, 395, 396 (1978).

Likewise here, even though the defendant endorsed the application with his signature without reviewing the answers for accuracy, it was the CPM Insurance representative who mistakenly entered the erroneous answer on the insurance application. Since a reasonable jury could find the policy in question was for homeowner's insurance and because the insurance representative may be viewed as acting in an agency capacity in the eyes of the

12

defendant when he supplied the incorrect answer, it would be consistent that he was in a position to bind the company to a homeowner's insurance contract with the defendant, notwithstanding any corresponding innocent mistakes by the defendant. As a result, because questions of agency are present and since such issues are provinces of a jury, there exists a genuine issue of material fact and the plaintiff's Motion for Summary Judgment should be denied.

C. **THE DEFENDANT'S FAILURE TO READ THE APPLICATION IS NOT SUFFICIENT TO RESCIND THE INSURANCE POLICY WHERE THE APPLICATION IS FILLED OUT BY AN AGENT OF THE COMPANY**

The plaintiff relies on Kelly v. John Hancock Mutual Life Ins. Co., 131 Conn. 106, 110, (1944), and Ryan v. World Mutual Life Ins. Co., 41 Conn. 168, 172 (1894) to support its contention the defendant was bound by a duty to review the answers for accuracy in the application for insurance before he signed it. However, its reliance is misplaced since those decisions rest on the foundation that an insurance representative is without responsibility for mistaken answers in an insurance application. In both Kelly and Ryan, the court refused to hold an insurance representative responsible for his mistakes on the application because he was not in an agency capacity. The court stated agency theory was not appropriate because the policies in question were life insurance policies and only one expressly clothed with

13

authority to enter into a contract for life insurance on behalf of the company may do so. The court stated because the contract was for life insurance, "the express authority of the agent was limited to receiving the application, forwarding it to the home office, receiving, countersigning and delivering the policy, and collecting the premiums." Ryan v. World Mutual Life Ins. Co., 41 Conn. 168, supra 170.

Courts in Connecticut have construed the powers of insurance agents liberally where contracts were for policies other than life insurance, and extended them somewhat by implication. *The Union Mutual Ins. Co. v. Wilkinson,* 13 Wall. 222 as quoted in Ryan v. World Mutual Life Ins. Co., supra 168. Thus it has been held where the subject matter involved policies other than life insurance, in writing the application, and explaining the interrogatories and the meaning of the terms used, the insurance representative is to be regarded as the agent of the company. In The Union Mutual Ins. Co. v. Wilkinson, supra, it was held where an agent by mistake, or acting upon information derived from others which proved to be incorrect, inserted an answer not true in fact, that it was the act of the insurers and not of the insured.

The court ultimately ruled against the insured in Ryan because the agent possessed neither authority, nor apparent authority and to have found otherwise in that instance would "clothe the agent with an authority not given him in fact, and to hold the principal

14

responsible for an act which could not by any possibility have been contemplated as being within the scope of the agency." Ryan v. World Mutual Life Ins. Co., supra 171. However, the court went on to state implicitly that the principle of holding an insurance company to its insurance contract where an employee was acting as an agent was still the rule, and "when one of two innocent persons must suffer by the fraud, negligence or unauthorized act of a third, he who clothed the third with the power to deceive or injure must be the one." Id. 174.

Because this insurance contract was for homeowner's insurance, and the insurance representative could be held to have been acting in an agent's capacity, and therefore in a position to bind his company to a contract, the fact the defendant did not review the application for innocent mistakes does not relieve the representative of responsibility for mistakes he made in the application. Therefore, since a question of agency exists, the question of who bears responsibility for the mistaken answer presents a genuine issue of material fact that is answerable by a jury and the plaintiff's Motion for Summary Judgment should be denied.

### D. A MATERIAL MISREPRESENTATION IN AN INSURANCE APPLICATION WILL NOT VOID THE CONTRACT WHERE THE MISREPRESENTATION IS INNOCENTLY MADE

The defendant does not dispute that the statements and answers contained in an insurance application become part of that

15

application and any contract of insurance issued on it, and that these statements and answers are material. State Bank & Trust Co., v. Connecticut General Life Ins. Co., supra 70. If the material representations are untrue, they "invalidate the policy without further proof of actual conscious design to defraud." Id., 72. Under Connecticut law, an insurer has a right to rescind for a material misrepresentation on an insurance application if it is not an innocent misrepresentation, but one "known by the insured to be false when made." Middlesex Mutual Assurance Co. v. Walsh, supra 692. Paul Revere Life Ins. Co. v. Pastena, supra 323, cert. denied, see also Bristol v. Commercial Union Life Ins. Co. of America, 211 Conn. 622, 628, 560 A.2d 460 (1989). Specifically, the insurer must prove that the applicant made (1) a misrepresentation, or untrue statement, (2) knowingly and (3) that was material to the insurer's decision whether to insure. See Pinette v. Assurance Co. of America, 52 F.3d 407, 409 (2nd Cir. 1995); Mt. Airy Ins. Co. v. Millstein, 928 F. Supp. 171, 174 (D. Conn. 1996).

In Middlesex, which the plaintiff's Motion for Summary Judgment cites, the court stated, " A response does not amount to a misrepresentation unless it was known by the applicant to be false when made." Middlesex Mutual Assurance Co. v. Walsh, supra 693. Here, the defendant has maintained he was unaware the plaintiff had supplied incorrect information on the application regarding the question of animals and exotic pets. This is

16

substantiated by the fact that his friend and co-habitant, Tricia Farace verbally informed a representative of the CPM Insurance Company prior to the defendant's signing the application, that she and the defendant owned two pet dogs. In doing so, the defendant had put the insurance company on notice that they owned pet dogs and therefore, as far as the defendant was concerned, had provided the insurance company with the correct information.

When considering that Tricia Farace informed the CPM Insurance Company that two pet dogs resided on the property, and that a CPM representative was the individual who actually filled in the answers to the questions on the application, both correct and incorrect, any misrepresentation on the part of the defendant must be considered innocent. As <u>Middlesex</u> clearly states, an insurance company's power to rescind an insurance contract where there was a material misrepresentation on an insurance application only exists if it is not shown to be an innocent misrepresentation. Id 692.

The plaintiff's Motion for Summary Judgment fails to show that. Factual questions are present regarding what was known by the CPM Insurance Company regarding pets living on the property, and whether any misrepresentation on the application was the responsibility of the insurance agent or the defendant. Since answers to those questions would be determinative of whether the defendant and Danbury Insurance Company entered into a contract

17

for homeowner's insurance that was not rescindable, the plaintiff's Motion for Summary Judgment should be denied.

### E. IF THE FAILURE TO DISCLOSE THE EXISTENCE OF A DOG WAS THE FAULT OF THE DEFENDANT, IT RESULTED FROM AN AMBIGUITY IN THE QUESTION ASKED

Where there is no ambiguity [in the language of a contract] . . . there is no occasion for construction [to determine intent] and the agreement will be enforced as its terms direct." McHugh v. McHugh, 181 Conn. 482, 491, 436 A.2d 8 (1980).  Contract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference of opinion. Levine v. Advest, Inc., 244 Conn. 732, 746, 714 A.2d (1998). "A contract should be construed so as to give full meaning and effect to all of its provisions . . ." (Internal quotation marks omitted.) Id., 753.  There is no dispute that the statements and answers contained in an insurance application become part of that application and any contract of insurance issued on it, and that these statements and answers are material. State Bank & Trust Co. v. Connecticut General Life Ins. Co., 109 Conn. 67, 70 145 A. 565 (1929).  If the material representations are untrue, they

18

"invalidate the policy without further proof of actual conscious design to defraud." Id., 72. An insurer has a right to rescind for a material misrepresentation on an insurance application if it is not an innocent misrepresentation, but one "known by the insured to be false when made." Middlesex Mutual Assurance Co. v. Walsh, supra 692.

Because insurance contracts are inevitably drafted by insurance companies, insurance contracts have been construed in favor of the insured and courts resolve all ambiguities against the insurer. . . . This rule applies to questions on insurance applications where the insurance company seeks to avoid liability by citing the answers thereto as misrepresentations." Vella, 887 F.2d at 391-92. When assessing an insurance company's claim that an insured has provided a material misrepresentation, the court is required to view the facts in the light most favorable to the insured and to draw all permissible inferences in its favor. See United States v. Diebold, Inc., 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct 993 (1962); Fischl v. Armitage, 128 F.ed 50, 55 (2d Cir. 1997); Donahue v. Windsor Locks Bd. Of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).

The court's obligation to provide full meaning and effect to contract language is apparent in Malloy v. Town of Colchester, 2003 Conn. Super. LEXIS 1439, where the issue centered on a zoning officer's investigation of roaming animals. The court sought to define the word "animal", standing alone without modification, and

19

looked to the Connecticut General Statutes. They defined an animal as, "any brute creature, including, but not limited to, dogs, cats, monkeys, guinea pigs, hamsters, rabbits, birds and reptiles." Id. Thus, standing alone, the term "animal" was widely inclusive in determining the type creatures included within the definition.

However, while a word can have one meaning when standing alone, it is viewed differently when modified by another word. In <u>Kaeser v. Zoning Bd. Of Appeals</u>, 218 Conn. 438 (1991), the question surrounded whether a horse could be considered a household pet. The court stated that when confronted with ambiguous language that had many possible meanings, meaning needed to be given to each word. Regarding the term "household pet", the court said the word "household" was an adjective that modified the word "pet." Therefore, the precise definition could not be limited to pet alone, but pets living within a household, a more restrictive class. The definition applied was "an animal reasonably capable of dwelling within a household, presumably under the same roof and living as a member of a family." *See Webster's Third New International Dictionary*. Applying that definition, the court held that a horse, by nature of its size, was unlikely to dwell in a house and therefore, while it could be classified a pet, it was not a household pet. Id. 443.

In comparing the definitions applied by the courts in Molloy and Kaeser, it is clear a word can be defined one way when

20

standing alone, but can mean something diverse when modified by another word. In Molloy, the definition of "animal" included a wide spectrum of beasts. However, in Kaeser, "pet" limited how wide a spectrum of animals could be included because the modifying word "household" restricted its meaning.

The difference made by a single word, apparent in Kaeser, is equally evident when looking at the court's reasoning in Hansen v. Maniatty, 1997 Conn. Super. LEXIS 805. There, the court sought to define the term "domesticated animal." The court stated, "The word 'domestic,' when used as a descriptive of the word 'animals,' means, in its general usage, a tamed animal as distinguished from a wild animal. Tame animals are those which are naturally tame and gentle, or which, by long association with man, have been thoroughly domesticated and are reduced to a state of subjection to man's will. Included within this definition of 'domestic animals' are such animals as horses, sheep, goats, cows, pigs, poultry, and all other animals which live in association with man." Smith v. State Farm Fire & Casualty Co., 381 So. 2d 913, 914-15 (La.App. 1980).

Again, the court modified a more inclusive classification to the definition of "animal" by defining the more restrictive term, "domestic animal." Clearly, the definition of animal is more inclusive when defined as in Molloy, but more restrictive when substituting the modifying word "domesticated", as used in Hansen.

The class is even further restricted when the modifying word is "household" as used in Kaeser.

In the case at bar, the issue centers on the question, "Does applicant or any tenant have any animals or exotic pets"? It is apparent when giving meaning to each word, that the insurance company meant to differentiate between the more inclusive definition of "animal" by modifying the sentence in its second part by asking about "exotic pets." In dissecting the sentence, the insurance company clearly envisioned a difference between the more inclusive word "animals", and a subset of animals that would be considered "exotic pets." Had the company not meant to create a distinction, it could have simply asked if the defendant owned any animals, which would have included pets, exotic or otherwise. In the context of the question, a reasonable interpretation would be that the insurance company was asking about (1) animals not considered pets, and (2) pets considered exotic. It would be a reasonable interpretation for one answering the question to make this distinction.

The insurance company further altered the sentence by modifying the word "pets" with the adjective "exotic." By giving each word meaning, it becomes apparent that the insurance company was not asking about all "pets" owned by the defendant, only those considered "exotic." In reading the entire question, which asked the defendant whether he owned "animals" or "exotic pets", it was reasonable to believe the first part of the question asked him

22

about animals not considered pets, and the second part asked him about pets that were exotic. In doing so, he could logically infer the insurance company did not mean to inquire about a non-exotic pet such as a dog.

By wording the question as it did, the plaintiff unmistakably meant to distinguish between animals and pets, and further between pets and exotic pets. If it was the plaintiff's intention to inquire whether the defendant owned any animals whatsoever, it could have asked that specifically without modification. The plaintiff did not do that. As a result, the question on the application regarding "animals" and "exotic pets" is vague and a reasonable reader of it could conclude that a "non-exotic pet" such as a dog was not the subject of the question. Because of the ambiguity of the question, and the various possibilities of interpretation, when viewing the facts in the light most favorable to the insured and by drawing all permissible inferences in the defendant's favor, the court should deny the plaintiff's Motion for Summary Judgment.

THE DEFENDANT,

_____
CHARLES B. ANGELO
His Attorney

23